IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br>Plaintiff, )<br>  )<br>vs. )<br>  )<br>**CARLOS ORTIZ**, )<br>  )<br>Defendant. ) | CASE NO. 21-PO-00021-JHR |

## UNITED STATES' MOTION *IN LIMINE* REGARDING DEFENDANT'S STATEMENTS

The United States hereby gives notice that it may offer, during its case-in-chief, the out-of-court statements of the defendant, Carlos Ortiz, described below. The United States respectfully requests that the Court issue a pretrial ruling on the admissibility of these statements, as they are not hearsay under Federal Rule of Evidence 801(d)(2). Based on the Court's recent ruling regarding the elements of the offense charged in this matter, *see* Doc. 14, the statements are highly probative and would cause little, if any, prejudice if introduced. Due to the nature of this motion, the defendant's opposition is presumed.

### BACKGROUND

On August 7, 2020, U.S. Forest Service Officer Terry Olsson and New Mexico Game and Fish Sergeant Shawn Carrell were conducting horseback patrol on a section of the Carson National Forest south of State Road 518, near Serpent Lake, in Taos County, New Mexico. A few days earlier, Sergeant Carrell became aware of a hunting trip itinerary submitted by the defendant, Carlos Ortiz. Ortiz is a hunting outfitter doing business as Reaper Backcountry Outfitters, LLC. The itinerary described a guided hunt for bighorn sheep on the Santa Fe National Forest set to begin on August 7, 2020. The permitted hunter agreed to pay Ortiz a $3,800 fee for guiding the

hunt, which also included three other non-hunters in the hunting party.

The itinerary caught Sergeant Carrell's attention because it included exact GPS coordinates for a campsite and described the hunt as taking place near Serpent Lake Trail and Jicarita Peak—all of which are within the boundaries of the Carson National Forest, not the Santa Fe National Forest.  Ortiz did not possess a special-use authorization to conduct guided hunts, or any other commercial activity, on the Carson National Forest.  His authorization was only to conduct guided hunts on the Santa Fe National Forest.  In fact, Ortiz had been trying to obtain a special-use authorization for the Carson National Forest for the 2020-21 hunting seasons for several months, but he had thus far failed to provide a complete application, so no authorization had been issued.

During their patrol, Officer Olsson and Sergeant Carrell encountered two individuals on horseback on Serpent Lake Trail.  The men told the officers they were helping Ortiz pack out a bighorn sheep that Ortiz's hunting client had killed earlier that morning near Serpent Lake.  The officers then proceeded to the GPS coordinates indicated for the campsite on Ortiz's trip itinerary.  There, they found an unoccupied campsite with several tents.  The campsite was within the Carson National Forest, approximately two miles from the border with the Santa Fe National Forest.  Since no one was at the camp, the officers decided to continue down Serpent Lake Trail to an overlook point.  Below, they saw a group of people who appeared to be processing a dead bighorn sheep. Sergeant Carrell recognized one of them as Ortiz.  No other hunting parties were in the area of that sheep at that time.

At approximately 11 a.m., the officers returned to the campsite. This time, they encountered Ortiz and his hunting party.  Ortiz provided what appeared to be copies of his trip itinerary and operating plan, although the documents were provided on Ortiz's cell phone, which made them difficult to view.  Ortiz also provided a copy of his contract with his hunting party.

Officer Olsson then confirmed that the permitted hunter had, in fact, killed a bighorn sheep that morning. Sergeant Carrell spoke with a member of the hunting party to obtain a description and approximate GPS coordinates for the location where the bighorn sheep had been killed. Sergeant Carrell took a photograph of this hunter's cell phone screen, which displayed the GPS coordinates. The officers then traveled to that location and found the remains of a recently killed bighorn sheep. That location was even further into the Carson National Forest.

Officer Olsson issued Ortiz a citation for violating 36 C.F.R. § 261.10(c), which prohibits anyone from selling or offering for sale any merchandise or conducting any kind of work activity or service unless authorized by special-use-authorization.

Ortiz, represented by counsel, made his initial appearance on the citation on April 21, 2021. He is scheduled for trial on September 23, 2021.

## DEFENDANT'S OUT-OF-COURT STATEMENTS

The evidence in this case involves three categories of Ortiz's out-of-court statements that are admissible under Rule 801(d)(2) and other exceptions to the hearsay rule:

(1) Ortiz's statements on official Forest Service records, which he submitted to the agency at various times in 2019 and 2020. For example, Ortiz, on behalf of his company, submitted trip itineraries, special-use authorization applications, and operational plans to Forest Service officials in both the Carson and Santa Fe National Forests in 2019 and 2020.

(2) Ortiz's statements to law enforcement officers on August 7, 2020, recorded on the officers' body-worn cameras. For example, Ortiz told officers that he was "scrambling" to get his paperwork together prior to the August 7, 2020, hunt and showed officers paperwork related to this hunt.

(3) Ortiz's statements in email communications with Forest Service officials. For example, in one email after the violation, Ortiz told Forest Service officials: "I aim to do better next time so I don't make this same mistake again."

3

**DISCUSSION**

The defendant's out-of-court statements outlined above are admissible under Rule 801(d)(2) and/or Rule 803(6). The statements are relevant because they directly pertain to the elements of this offense—specifically, Ortiz's conduct of commercial activity on the Carson National Forest and his lack of authorization to do so. Any prejudice from these statements is minimal since the defendant himself made them. Therefore, they survive the balancing test of Rule 403.

I. **The Defendant's Statements Are Not Hearsay Because They Are Statements of a Party Opponent and/or Business Records.**

"A statement is not considered 'hearsay' if it is offered against a party and is the party's own statement." *United States v. Brinson*, 772 F.3d 1314, 1320 (10th Cir. 2014) (citing Fed. R. Evid. 801(d)(2)(A)). *See also United States v. Pinalto*, 771 F.2d 457, 459 (10th Cir. 1985) (quoting Advisory Committee notes to Rule 801(d)(2)). A proponent of such evidence "need only show by a preponderance of the evidence that the opposing party had made the statement." *Brinson*, 772 F.3d at 1320.

Here, there is no colorable argument about who made the statements identified above. The statements derive from written documents that bear Ortiz's name and/or signature, video recordings of law enforcement encounters with him, and emails that come from his email address. The facts will readily permit the Court to conclude by a preponderance of the evidence that the defendant made each of the statements within the categories identified above. They are being offered by the United States against the defendant. Therefore, Rule 801(d)(2) is satisfied.

Additionally, several of the documents and emails just mentioned fall within a separate exception to the hearsay rule, as they are regularly maintained business records of Forest Service officials. *See* Rule 803(6). The testimony of Forest Service officials will establish the predicates

for the business records exception and will not reveal any lack of trustworthiness in the records. This exception provides an alternative basis for admitting the documents containing the defendant's statements into evidence.

II.     **The Evidence Is Relevant.**

Evidence is relevant if it "tends to make the existence of any fact" of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401; *United States v. Mendoza-Salgado*, 964 F.2d 993, 1006 (10th Cir. 1992). Under Rule 401, a fact is of consequence when its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict. *Id*. The rule sets the bar low. *See Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 587 (1993); *Amoco Rocmount Co. v. Anschutz Corp*., 7 F.3d 909, 919 (10th Cir. 1993). Even a minimal degree of probability—*i.e.*, "any tendency"—to prove a fact at issue is sufficient. *See Daubert*, 509 U.S. at 587; Fed. R. Evid. 401.

The statements identified above satisfy this minimal standard. These statements demonstrate that the defendant tried—and failed—to obtain a special-use authorization for the Carson prior to the August 7, 2020, hunt. They also show that the defendant was, in fact, conducting commercial activity on the Carson on August 7, 2020. And in one email after the violation, the defendant admitted his mistake: "I aim to do better next time so I don't make this same mistake again," he wrote to Forest Service officials. All of that evidence is directly relevant to establishing the elements of this offense.

III.    **The Probative Value of the Evidence Outweighs Any Danger of Unfair Prejudice.**

Under Rule 403, the Court must weigh the probative value of relevant evidence against its potential for unfair prejudice. *United States v. Record*, 873 F.2d 1363, 1375 (10th Cir. 1989).

5

"The trial court has broad discretion to determine whether or not prejudice inherent in otherwise relevant evidence outweighs its probative value." *Id.* Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged. *United States v. Rodriguez*, 192 F.2d 946, 951 (10th Cir. 1999). Evidence is not unfairly prejudicial simply because it is damaging to the defendant's case. *United States v. Martinez*, 938 F. 2d 1078, 1082 (10th Cir. 1991).

Here, the probative value of the defendant's statements far outweighs any danger of unfair prejudice. As just discussed, they are strongly probative of the defendant committing the violation charged. The only apparent prejudice from the defendant's statements is that they are damaging to his case—which is not the kind of prejudice that matters for Rule 403. And in any event, since this is a bench trial, the Court can readily set aside any adverse emotional reaction that may arise from the defendant's statements and evaluate the statements for their legal and factual relevance to the offense charged.

## CONCLUSION

For the above reasons, the United States respectfully requests that the Court allow the above-described evidence to be offered in the prosecution's case-in-chief. The United States seeks a pretrial ruling on this motion.

Respectfully submitted,

FRED J. FEDERICI
Acting United States Attorney

*Electronically filed September 20, 2021*
LOUIS C. MATTEI
Assistant United States Attorney
Post Office Box 607
Albuquerque, New Mexico 87102
(505) 224-1450

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will cause a copy of this filing to be sent to counsel for the defendant.

*Electronically filed September 20, 2021*
LOUIS C. MATTEI
Assistant United States Attorney